RONALD CHRISMAN, C-55019
(Name)

P.O.BOX 799001
(Address)

SAN DIEGO,CA. 92179-9001
(City, State, Zip)

C-55019
(CDC Inmate No.)



2254        1983
FILING FEE PAID
Yes        No ✓
IFP MOTION FILED
Yes ✓     No
COPIES SENT TO
Court ✓   ProSe

FILED
2007 NOV -2 PM 3:05
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

# United States District Court
## Southern District of California

RONALD CHRISMAN _____,
(Enter full name of plaintiff in this action.)

                          Plaintiff,

v.
DAVID SMITH,M.D./ M.SHERIDAN,C.C.I.,
M.X. McCURTY,C.O./ D.KOLUDROVIC, SGT.
K.HAWTHORNE,C.M.O./ ESCALANTE,C.O.,
DR. RICHARDS, / R.N. MARQUEZ,
JOHN/JANE DOES, / C.NAVAMANI,M.D.,
(Enter full name of each defendant in this action.)      et al.
                          Defendant(s).

)
)
)  '07 CV 2101 IEG    LSP
)
)  Civil Case No._____
)  (To be supplied by Court Clerk)_____
)
)
)  Complaint under the
)  Civil Rights Act
)  42 U.S.C. § 1983
)
)
)
)
)

## A. Jurisdiction

Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983. If you wish to assert jurisdiction under different or additional authority, list them below.   SEE ATTACHED
COMPLAINT...DEMAND FOR JURY TRIAL...PAGE 2,¶2

## B. Parties

1. Plaintiff: This complaint alleges that the civil rights of Plaintiff, _____ RONALD _____
(print Plaintiff's name)
CHRISMAN _____, who presently resides at  R.J.DONOVAN CORRECTIONAL
(mailing address or place of confinement)
FACILITY / P.O.BOX 799001 / SAN DIEGO,CA.92179-9001 , were violated by the actions

of the below named individuals. The actions were directed against Plaintiff at  R.J. DONOVAN
CORRECTIONAL FACILITY _____ on (dates) 09/26/06 , 09/28/06 , and  07/20/07 .
(institution/place where violation occurred)   (Count 1)   (Count 2)   (Count 3)

§ 1983 SD Form
(Rev. 4/06)

2. <u>Defendants</u>:  (Attach same information on additional pages if you are naming more than 4 defendants.)

SEE ATTACHED COMPLAINT...  DEMAND FOR JURY TRIAL , PAGE 2¶2

Defendant _____ resides in _____,
                           (name)                                  (County of residence)

and is employed as a _____. This defendant is sued in
                                  (defendant's position/title (if any))

his/her □ individual □ official capacity.  (Check one or both.)  Explain how this defendant was acting

under color of law: _____

_____

_____

Defendant _____ resides in _____,
                           (name)                                  (County of residence)

and is employed as a _____. This defendant is sued in
                                    (defendant's position/title (if any))

his/her □ individual □ official capacity.  (Check one or both.)  Explain how this defendant was acting

under color of law: _____

_____

_____

Defendant _____ resides in _____,
                           (name)                                  (County of residence)

and is employed as a _____. This defendant is sued in
                                    (defendant's position/title (if any))

his/her □ individual □ official capacity.  (Check one or both.)  Explain how this defendant was acting

under color of law: _____

_____

_____

Defendant _____ resides in _____,
                           (name)                                  (County of residence)

and is employed as a _____. This defendant is sued in
                                      (defendant's position/title (if any))

his/her □ individual □ official capacity.  (Check one or both.)  Explain how this defendant was acting

under color of law: _____

_____

_____

**C. Causes of Action** (You may attach additional pages alleging other causes of action and the facts supporting them if necessary.)

<u>Count 1</u>:  The following civil right has been violated:  SEE ATTACHED COMPLAINT ...DEMAND

FOR JURY TRIAL...

(E.g., right to medical care, access to courts, due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.)

<u>Supporting Facts</u>:   [Include all facts you consider important to Count 1.  State what happened clearly and in your own words.  You need not cite legal authority or argument.  Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Count 1.]

<u>Count 2</u>:  The following civil right has been violated:    SEE ATTACHED COMPLAINT....

(E.g., right to medical care, access to courts,

DEMAND FOR JURY TRIAL...

due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.)

<u>Supporting Facts</u>:    [Include all facts you consider important to Count 2.  State what happened clearly and in your own words.  You need not cite legal authority or argument.  Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Count 2.]

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

<u>Count 3</u>:  The following civil right has been violated:_____ SEE ATTACHED COMPLAINT ...

DEMAND FOR JURY TRIAL,..

(E.g., right to medical care, access to courts, due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.)

<u>Supporting Facts</u>:   [Include all facts you consider important to Count 3.  State what happened clearly and in your own words.  You need not cite legal authority or argument.  Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Count 3.]

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

§ 1983 SD Form
(Rev  4/06)

**D. Previous Lawsuits and Administrative Relief**

1. Have you filed other lawsuits in state or federal courts dealing with the same or similar facts involved in this case? ☐ Yes ☒ No.

If your answer is "Yes", describe each suit in the space below. [If more than one, attach additional pages providing the same information as below.]

(a) Parties to the previous lawsuit:
Plaintiffs: _____

Defendants: _____

(b) Name of the court and docket number: _____

_____

(c) Disposition: [ For example, was the case dismissed, appealed, or still pending?] _____

_____

(d) Issues raised: _____

_____

_____

_____

_____

(e) Approximate date case was filed: _____.

(f) Approximate date of disposition: _____.

2. Have you previously sought and exhausted all forms of informal or formal relief from the proper administrative officials regarding the acts alleged in Part C above? [E.g., CDC Inmate/Parolee Appeal Form 602, etc.] ? ☒ Yes ☐ No.

If your answer is "Yes", briefly describe how relief was sought and the results. If your answer is "No", briefly explain why administrative relief was not sought. SEE ATTACHED LETTER

FROM THE CALIFORNIA BOARD OF CONTROL . . . . . . . . _____

_____

_____

_____

_____

_____

_____

**E. Request for Relief**

Plaintiff requests that this Court grant the following relief:

      1. An injunction preventing defendant(s): FROM NOT PROVIDING ME PROMPT ,

ADEQUATE, MEANINGFUL, AND EFFECTIVE TREATMENT/DIAGNOSIS FOR SERIOUS PAIN AND

COMPLAINED OF MEDICAL CONDITIONS.... SEE ATTACHED COMPLAINT PGS. 21-22, PRAYER

FOR RELIEF....

      2. Damages in the sum of $ 3,000,000.

      3. Punitive damages in the sum of $ 1,000,000.

      4. Other: See attached Complaint, PRAYER FOR RELIEF, PGS. 21-22

**F. Demand for Jury Trial**

    Plaintiff demands a trial by ☒ Jury ☐ Court. (Choose one.)

**G. Consent to Magistrate Judge Jurisdiction**

    In order to insure the just, speedy and inexpensive determination of Section 1983 Prisoner cases filed in this district, the Court has adopted a case assignment involving direct assignment of these cases to magistrate judges to conduct all proceedings including jury or bench trial and the entry of final judgment on consent of all the parties under 28 U.S.C. § 636(c), thus waiving the right to proceed before a district judge. The parties are free to withhold consent without adverse substantive consequences.

    The Court encourages parties to utilize this efficient and expeditious program for case resolution due to the trial judge quality of the magistrate judges and to maximize access to the court system in a district where the criminal case loads severely limits the availability of the district judges for trial of civil cases. Consent to a magistrate judge will likely result in an earlier trial date. If you request that a district judge be designated to decide dispositive motions and try your case, a magistrate judge will nevertheless hear and decide all non-dispositive motions and will hear and issue a recommendation to the district judge as to all dispositive motions.

    You may consent to have a magistrate judge conduct any and all further proceedings in this case, including trial, and the entry of final judgment by indicating your consent below.

Choose only one of the following:

☒ Plaintiff consents to magistrate    **OR**    ☐ Plaintiff requests that a district judge
    judge jurisdiction as set forth                      be designated to decide dispositive
    above.                                        matters and trial in this case.

10/31/07

Date                                              Signature of Plaintiff

1  Ronald Chrisman, C55019
   (Fac.1-1-116)
2  P.O. Box 799001
   San Diego, CA 92179-9001
3

4  In Propria Persona

5

6

7                  UNITED STATES DISTRICT COURT

8                SOUTHERN DISTRICT OF CALIFORNIA

9

10 Ronald Chrisman              )    Case No._____
                                )
11         Plaintiff,           )    COMPLAINT UNDER THE CIVIL
                                )    RIGHTS ACT 42 U.S.C. §1983
12 V.                           )
   DAVID SMITH, M.D.,           )    **DEMAND FOR JURY TRIAL**
13 M. SHERIDAN,                 )
   M.X. McCURTY,                )
14 D. KOLUDROVIC,               )
   K. HAWTHORNE,                )
15 C/O ESCALANTE,               )
   DR. RICHARDS,                )
16 R.N. Marquez,                )
   John/Jane Does, et al.       )
17 C. NAVAMANI, M.D.            )
   _____Defendants_____)

18

19                  GENERAL ALLEGATIONS

20     1. This is a complaint for torts and damages for defendants'

21 deliberate indifference to the serious medical needs of plaintiff

22 Ronald Chrisman during his confinement at Richard J. Donovan

23 Correctional Facility (R.J.D.) in San Diego County, California,

24 for  which certain staff members willfully, maliciously,

25 negligently, and knowingly committed under color of law an

26 eight (8th) Amendment violations, cruel and unusual punishmnet,

27 and  14th Amendment violations of the United States Constitution.

28 These violations are also contrary to and unreasonably done

                              1.

1   in violation of United States Supreme Court law , Estelle v.

2   Gamble, and California Constitution Article I, §7(a), §17, and

3   §24.

4        2. Jurisdiction is invoked pursuant to 28 U.S.C. §1343(a)(3)

5   and 42 U.S.C. §1983, and under 42 U.S.C. §12101 et seq. and

6   28 U.S.C. §1331, §1367, and §1391(b)(2).

7        3. All of the conduct giving rise to the claims alleged

8   herein arose in San Diego County, California.

9        4. Plaintiff Ronald Chrisman, is and was at all relevant

10  times mentioned herein an inmate in the custody, control, and

11  care of Richard J. Donovan Correctional Facility employees.

12  Plaintiff is an inmate in R.J.D. Correctional Facility from

13  9-26-06 to present, and at all times during that incarceration

14  plaintiff relied on the medical care of providers and employees

15  of R.J.D. Correctional Facility to provide him with the necessary,

16  prescribed, and/or reasonable, and/or recommended medical care,

17  and that care required by law.

18       5. Plaintiff is informed and believes, and thereon alleges,

19  that defendant M. Sheridan, Correctional Counselor I, and  at

20  all times mentioned herein, was employed by R.J.D. Correctional

21  Facility as a Correctional Counselor and/or Medical Technical

22  Assistant of Facility One (1) at R.J.D. If necessary, plaintiff

23  will amend the complaint ot include any specific time frame and

24  action/inaction upon dsicovery. Plaintiff is further informed and

25  believes, and thereon alleges, that defendant M. Sheridan, is

26  properly trained as a Medical Technical Assistant (M.T.A.) and

27  Correctional Counselor I, who was responsible for the medical

28  care of all inmates at R.J.D., this includes but is not limited

                              2.

1  to, the supervision, direction, and evaluation of inmates who

2  need medical treatment, and assuring that inmates who need

3  medical care are promptly, reasonably, expediently seen by

4  the proper medical staff for diagnosis, pain evaluation, care,

5  and treatment of serious and/or minor medical conditions and/or

6  complaints. At all times mentioned herein defendant M. Sheridan,

7  failed to properly act to provide plaintiff with proper, expedient,

8  necessary, reasonable, referal to medical staff and/or medical

9  care for serious, painful, debilitating, injury suffered by

10 the incident on or about 9-26-06, and/or 9-27-06, and/or 9-28-06

11 to present. At all times mentioned herein defendant M. Sheridan,

12 M.T.A./Correctional Counselor I was acting under color of law,

13 in the course of his/her employment, and is sued in his/her

14 official and individual capacities.

15    6. Plaintiff is informed and believes, and thereon alleges,

16 that defendant M.X. McCurty, Correctional Officer, and at all

17 times mentioned herein  was employed by R.J.D. Correctional

18 Facility,as a Correctional Officer,in San Diego, California.

19 Plaintiff further is informed and believes, and thereon alleges,

20 that defendant M.X. McCurty, Correctional Officer,  acted and/or

21 failed to act, as a Correctional Officer, is responsible for

22 supervising the implementation of, monitoring compliance with,

23 enforcing and/or enforcement of policies and procrdures

24 affecting the medical care of all inmates within R.J.D. Corrections

25 Facility. In this position defendant M.X. McCurty is and has

26 been responsible for assuring that all inmates receive proper,

27 reasonable, necessary, and expedient medical care, and the

28 carrying out of all medical orders by custorial staff, hiself,

3.

1  and others in the line of reasonable performing his fuduciary

2  duty as a Correctional Officer. In this possition, M.X. McCurty

3  is responsible for assuring the reasonable health  and safety

4  of all inmates at R.J.D. Correctional Facility, and at all times

5  mentioned herein, M.X. McCurty, was acting under color of law,

6  in the course and scope of his employment and with malicious

7  deliberate indifference to plaintiffs medical complaints, serious

8  medical need for treatment and care refused to provide plaintiff

9  access to reasonabe, proper, adequate, meaningful, necessary

10  care facilities and staff on or about 9-26-06, 9-27-06, 9-28-06,

11  to present upon plaintiff's reasonable request for medical care.

12  Defendant M.X. McCurty, is herein sued in his official and

13  individual capacities.

14       7. Plaintiff is informed and believes, and thereon alleges,

15  that defendant D. Koludrovic, Correctional Sergeant, and at

16  all times mentioned herein was employed by R.J.D. Correctional

17  Facility, as a Correctional Sergeant, in San Diego, California.

18  Plaintiff further is informed and believes, and thereon alleges,

19  that defendant D. Koludrovic, Correctional Sergeant, acted

20  and/or failed to act, as a Correctional Sergeant, is responsible

21  for supervising the implementation of, monitoring compliance

22  with, enforcing and/or enforcement of policies and procedures

23  affecting the medical care of all inmates within R.J.D.

24  Correctional Facility. In this position defendant D. Koludrovic,

25  Correctional Sergeant, is and has been responsible for assuring

26  that all inmates receive proper, reasonable, necessary, and

27  expendent medical care, and the carrying out of all medical

28  orders by the custodial staff, himself, and others in the line

1  of reasonably performing his fudiciary duty as a Correctional

2  Sergeant. In this possition, D. Koludrovic, is responsible

3  for assureing the reasonable health and safty of all inmates

4  at R.J.D. Correctional Facility, and at all times mentioned

5  herein, D. koludrovic, was acting under color of law, in the

6  course and scope of his employment and with malicious, deliberate

7  indifference to plaintiff's medical complaints, serious medical

8  need for treatment and care refused to provide plaintiff access

9  to reasonable, proper, adequate, meaningful necessary care

10  facilities and staff on or about 9-26-06, 9-27-06, 9-28-06,

11  to present upon plaintiff's reasonable request for medical

12  care. Defeandant D. Koludrovic, is herein sued in his  official

13  and individual capacities.

14    8. Plaintiff is informed and believes, and thereon alleges,

15  that defendant K. Hawthorne,Chief Medical Officer (CMO), M.D.,

16  and at all times relevant herein, was employed by R.J.D.

17  Correctional Facility. in San Diego, California. Plaintiff is

18  further informed and believes, and thereon alleges, that defendant

19  K. Hawthorne,CMO, M.D., is properly trained and licensed medical

20  doctor who was and is responsible for the medical care of all

21  inmates at R.J.D. Correctional Facility; This included, but

22  was not limited to, the supervision, direction, and/or proper

23  training of the medical staff at R.J.D. Correctional Facility

24  in the delivery of health care services and the management of

25  health care programs, involvement in the determination of proper

26  medical care for inmates, including, but not limited to, having

27  authority to order and approve medical tests, treatments, and

28  make medical remommendations for custodial care, to be done,

having authority to assure that inmates who are transferred
to other institutions receive continued proper medical care,
having authority and responsibility for assuring the proper
ordering, stocking of medical supplies, medications, communication
of medical needs to correctional,custody, staff, and medical
employees, and generally making sure that proper medical treat-
ment, and follow ups, are provided to all inmates. Plaintiff
is further informed and believes, and thereon alleges, that
defendant CMO is responsible for assuring that R.J.D. Correctional
Facility medical staff, and  all other medical providers with
whom the R.J.D. facility contracts in providing medical care
to inmates at R.J.D., provide proper medical care to inmates,
and that all such individuals know and understand, and act
pursuant to R.J.D. Correctional Facility policy and procedures.
Plaintiff believes and is informed, and thereon alleges that
the CMO is responsible in some manner for the injuries alleged
in  this complaint. At all times mentioned defendant CMO, K.
Hawthorne was acting under color of state law, in the course
of his employment, and is sued herein in his/her official and
individual capacities.

9. Plaintiff is infromed and believes, and thereon alleges,
that defendant Escalante, Correctional Officer (C/O), and at
all times mentioned herein was imployed by R.J.D. Correctional
Facility, as a C/O, in San Diego, Califronia. Plaintiff further
is informed and beleives, and thereon alleges, that defendant
Escalante, C/O, acted and/or failed to act, as a C/O, who is
responsible for supervising the implementation of, monitoring
compliance with, enforcing and/or enforcement of policies and

6.

procedures affecting the medical care of all inmates within
R.J.D. Correctional Facility. In this position defendant, C/O
Escalante is and has been responsible for assuring that all
inmates receive expedient, reasonable, necessary, and proper
medical care, and that of the carrying out of all medical orders
by custodial staff, himself, others in the line of reasonablly
performing his fuduciary duty as a C/O. In this position, C/O
Escalante is responsible for assuring the reasonable health
and safety of all inmates at R.J.D., and at all times mentioned
herein, he was acting under color of law, in the course and
scope of his employment and with malicious, deliberate indiffer-
ence to pleaintiff's medical complaints, serious medical needs
for treatemnt adn care refused to provide plaintiff access to
reasonable, proper, necessary, adequate, and menaingful medical
care facilities and/or staff on or about 9-26-06, 9-27-06,
9-28-06, and to present upon plaintiff's reasonable requests
for medical care and pain treatemnt. Defendant Escalante, C/O,
is herein sued in his official and individual capacities.

    10. Plaintiff is informed and believes, and thereon alleges,
that defendant Richards, M.D., and at all times relebant herein,
was employed by R.J.D. Correctional Facility as a staff Doctor.
Plaintiff is further informed and believes, and thereon alleges,
that defendant Richards, M.D., is a properly trained and licensed
medical doctor who was responsible for the medical care of all
inmates at R.J.D. This included, but was not limited to, the
supervision, dircetion, and/or proper training of the medical
staff at R.J.D. in the delivery of health care services and
the management of health care programs,  involvemnet in the

7.

1  determination of proper medical care for inmates, including,

2  but not limited to, having authority to order and approve medical

3  tests, treatments, and make medical recommendations for custodial

4  care, to be done, having authority to assure that inmates who

5  are transferred to other institutions receive continuing proper

6  medical care, having authority and responsibility for assuring

7  the proper ordering, stocking of medical supplies, prescribing

8  of pain medicaltions and other medications, communication of

9  medical needs to correctional, custody, and other staff and

10  medical employees, and generally, making sure that proper

11  medical treatment, and follow ups, are provided to all inmates.

12  Plaintiff is further informed and believes, and thereon alleges,

13  that defendant Richards, M.D., is responsible for assuring that

14  R.J.D. medical staff, and all other medical providers with

15  whom R.J.D. Correctional Facility contracts in providing medical

16  care to inmates at R.J.D., provide proper medicla care to the

17  inmates, and that all such individuals know and unde4rstand,

18  and act pursuant to R.J.D. policy adn procedures. On or about

19  9-26-06, 9-27-06, 9-28-06 to present defendant Richards, M.D.,

20  acted, and or failed to act, to provide plaintiff with needed

21  serious medical care and pain treatment for serious injury;

22  Defendant Richards acted with deliberate indifference and

23  malisiousness, in refusing to provide proper, necessary, needed

24  adequate, and meaningtful medical care upon plaintiff's reasonable

25  requests for medical care. At all times mentioned defendant

26  Richards, M.D. was acting under color of state law, in the course

27  of his/her employment, and is sued herein in his/her official

28  and individual capacities.

8.

11. Defendant Marquez, R.N. is, and at all times relevant herein was employed by the CDCR as a registered nurse at R.J.D. Correctional Facility, in San Diego California. Plaintiff is informed and believes, and thereon alleges, that defendant Marquez, R.N. is a properly trained and licensed registered nurse who is and and has been responsible for the medical care of all inmates at R.J.D., including plaintiff, and either delayed and/or denied plaintiff treatment, prompt medical care at all times mentioned herein; At all times mentioned herein, defendant Marquez, was acting under color of state law, in the course and scope of his/her employment, and is sued in his/her official and individual capacities.

12. Defendants designated as John Doe and Jane Doe, inclusive, consist of any and all defendants later discovered, who are and were currently employed by R.J.D. Correctional facility and are responsible for the medical care of all inmates at R.J.D., including, but not limited to, the supervision, direction, and or proper training of medical and/of custodial staff at R.J.D. in the delivery of health care services and the management of health care programs; involvement in the determination of proper medical care for inmates, including, having authority to promptley seek medical care for needed inmates, having authority to order and approve medical tests and treatments to be done; and assuring the proper communication of inmates medical needs to all staff, custodial and medical, and generally, making sure that proper medical treatment is provided to all inmates. Plaintiff is inform- ed and believes, and alleges, that defendants John/Jane doe were acting under color of law and is sued officially and individually.

9.

12. Plaintiff is informed and believes, and thereon alleges, David Smith, M.D., at all times relevant herein, was employed by Alvarado Hospital, and contracted/employed as a Doctor by the hospital and Richard J. Donovan Correctional Facility. Plaintiff is further informed and believes, and thereon alleges that defendant Dr. David Smith, is properly trained and licensed medical doctor who was responsible for surgery on two occasions on plaintiff's fifth finger, 7-20-07 and 7-31-07, and who was responsible for the medical care of all inmates that come to Alvarado Hospital for certain surgeries and treatment of injuries. This care included, but was not limited to, the supervison, direction, and/or proper training of medical staff under his authority at Alvarado Hospital/R.J.D. Corr. Fac. in the delivery of health care services and the management of health care programs; In volvement in the determination of proper medical care for inmates, including, but not limited to, having authority to order and approve medical tests, treatments, and make medical recommendations for custodial care, to be done; Having authority to assure that inmates who are transferred to other institutions receive continued proper medical care; having authority and responsibility for assuring the proper ordering, stocking of medical supplies, prescribing of pain medications, communication of medical needs to correctional, custody, staff and medical employees, and generally, making sure that proper medical treatment, and follow ups, are provided to all inmates. Plaintiff is informed and believes, and thereon alleges, that defendant David Smith, M.D., is responsibile for assuring that all medical staff, and medical providers with whom R.J.D. Correctional

10.

Facility contracts in providing medical care to inmates at
R.J.D. Corr. Fac., to provide proper medical care to the inmates,
and that all such individuals know and understand, and act purs-
uant to R.J.D. policy. At all times mentioned defendant David
Smith, M.D. was acting under color of State law, in the course
of his employment, and is sued herein in his official and indiv-
idual capacities.

13. Plaintiff is informed and believes, and thereon alleges,
that defendant C. Navamani, M.D., and at all times relevant
herein, was employed by R.J.D. Corr. Fac. as a Doctor. That
on  or about  2-22-07 defendant C. Navamani, M.D., with malice,
deliberate indiffenance, to plaintiff's requests for needed
pain treatment and medical care, provided care that amounted
to not care at all, and refused to properly care for plaintiff's
broken finger and broken nose; Leaving plaintiff in excruciating
pain regardless of his pleas for pain relief and treatment;
Plaintiff is informed and believes, and thereon alleges, that
defendant C. Navamani, M.D., is properly trained and licensed
medical doctor who was and is responsible for the medical care
of all inmates at R.J.D. Corr. Fac.. This included, but was
not limited to, the supervision, direction, and/or proper train-
ing of medical staff at R.J.D. in the delivery of health care
services and the management of health care programs; involvement
in the determination of proper medical care for inmates, including
but not limited to, having authority to order and approve medical
tests, treatments, and make medical recommendations for custodial
care, to be done; having authority to assure that inmates who
are transferred to other institutions receive continuing proper

medical care, and having authority and responsibility for assuring

the proper ordering, stocking of medical supplies, and perscribing

of pain and treatment medications, communication of medical

needs to correctional, custody, staff and medical employees,

and generally, making sure that proper medical treatment, and

follow ups, are provided to all inmates. Plaintiff is further

informed and believes, and thereon alleges, that defendant

C. Navamani, M.D., is responsible for assuring that R.J.D. Corr.

Fac. medical staff, and all other medical providers with whom

R.J.D. contracts in providing medical care to inmates, provide

prompt, proper, medical care to the inmates, and that all such

individuals know and understand, and act pursuant to R.J.D.

Corr. Fac. policy. At all times mentioned defendant C. Navamani,

M.D., was acting under color of State Law, in the course of

employment, and is sued herein in his/her official and individual

capacities. This defendant is responsibile for failure to properly

care for and answer the medical requests of plaintiff ongoing

up to  and beyond on or about 7-20-07/7-31-07 to present.

14. On September 26, 2006, at approximately 0830 hours, in

Building One, R.J.D. Correctional Facility, Plaintiff was violent-

ly and viciously attacked from behind, without warning and/or

provocation, by inmate Bolton C.D.C.R. # F16958; Inmate Bolton

C.D.C.R. #F16958, maliciously and violently committed an assault

and battery on plaintiff, causing him serious injuries to his

left hand and nose; Specifically, inmate Bolton broke plaintiff's

nose and fifth finger, and blackened both of his eyes, leaving

plaintiff with serious, painful, and debilitating injuries;

15. On September 26, 2006, three Correctional Officers were on

12.

1   duty; One Correctional Officer (hereinafter C/O) in the Control

2   Tower, and two C/Os on the day-room floor, at the Podium; The

3   C/Os at the Podium were in conversation when the attack on

4   plaintiff was initiated; The C/Os at the Podium soon observed

5   the attack on plaintiff by inmate Bolton and immediately took

6   action to separate the two inmates;

7   16. C/O Ascio, initiated the Alarm and the entire building of

8   inmates was ordered to sit on the floor while numerous Staff

9   arrived. Both Inmates Bolton, and plaintiff Chrisman, were

10  escorted out of the building to Facility Clinic, pursuant to

11  R.J.D. policy;

12  17. Inmate Bolton was taken into the clinic first even though

13  he had no apparent injuries, while plaintiff was left outside the

14  Facility One Clinic, in pain, complaining, until the examination

15  of inmate Bolton was completed.

16  18. On September 26, 2006, plaintiff was taken to see defendant

17  Sheridan, Medical Technical Assistant (hereinafter MTA) for the

18  intitial examination, cursory inspection, and determination of

19  whether or not plaintiff was in need of a medical doctor; The

20  defendant took some cursory notes for the C.D.C. 7219, Medical

21  Report of an injury or unusual occurrence; Plaintiff complained

22  of severe pain in his face and left hand; Specifically, plaintiff

23  told the MTA Sheridan that his left fifth finger is extremely

24  swollen, very painful, and obviously fractured; He also noted to

25  the MTA Sheridan that his nose is caved in on one side, bleeding,

26  lacerated and also fractured and painful; Plaintiff additionally

27  complained about a large knot, bump, swollen, on the backside of

28  his left ear; Plaintiff verbalized his injuries, and severe pain,

13.

1  and need for immediate treatment and pain relief to all that

2  were present, MTA Sheridan, and C/O McCurty; Plaintiff told the

3  defendants that his pain was excruciating; Both defendant's look-

4  ed at each other, kind of chuckled, and said nothing until I said

5  that **"MY FINDER AND NOSE ARE BROKEN"** and C/O McCurty replied,

6  **"It looks like it."**

7     19.Defendant Sheridan, MTA, after completing the C.D.C. 7219,

8  said:  **"Okay, you can go back now."** The plaintiff was shocked and

9  taken aback, and replied: **"I NEED MEDICAL ATTENTION;"** Pain relief.

10  Defendant Sheridan, MTA, said, with disdain:  **"Sign up for sick**

11  **call"** (Note:  Sick Call can take anywhere from one week to two

12  weeks to see a doctor); Plaintiff pleaded with the MTA Sheridan

13  and C/O McCurty, to permit him to see a doctor for treatment and

14  pain releif because he stated:  **"I hurt all over, my finger is**

15  **broken and my nose feels broken also, could you please send me**

16  **to the infirmary?"**

17     20.Defendant Sheridan, MTA, became upset and impatient, and

18  stated: **"NO DOCTOR" "GO BACK TO YOUR BUILDING!"** Plaintiff was

19  in so much pain he then protested the instruction to return to

20  the building without treatment or seeing a doctor; Plaintiff was

21  experiencing callous disregard for his medical needs, he then

22  protested by refusing to go lock up.

23     21.Defendant McCurty, C/O became angry and told plaintiff:

24  **"You're done, NOW GO LOCK UP."** Plaintiff was in fear of being

25  dragged off to the HOLE (PHU), so he protested and complained once

26  again and complied with the order of both defendant's Sheridan

27  and McCurty as they were the only two officers on the yard at the

28  time. Plaintiff reluctantly returned to Building One in severe

14.

1  pain and mental distress; Plaintiff was feeling helpless and

2  hurting all over;

3    22. Plaintiff returned to his housing unit, after protest, and

4  once he realized that he would either end up in the Hole or

5  just not get the requested treatment; Plaintiff therefore asked

6  the Floor C/O present, as it was the 10:00 hours Count time,

7  to see the Program Sergeant Koludrovic because he is being left

8  to suffer in severe pain with a broken nose and finger, and

9  lumped up head, without treatemnt; Plaintiff was told tht:

10  "It's Count Time, go lock up." Plaintiff complied; But still

11  complained of being left in severe pain, by this John Doe also;

12    23. Plaintiff was forced to suffer through the entire night

13  without sleep, and without pain releif, and medical attention;

14  Plaintiff called for the C/O John Doe, presently on duty, but

15  was ignored repeatedly; Plaintiff tried to self medicate by

16  taking numerous Ibuprofen tablets that he had, but it gave him

17  no relief for the severe pain he was experiencing from both

18  the broken nose and finger; The Pain lingered and every step

19  he took in pacing the cell seemed to jar the bones, making him

20  hurt more;

21    24. On 9-27-06 plaintiff went directly to the Facility One

22  Clinic to request treatment and pain relief; Plaintiff told

23  C/O Escalante that plaintiff was suffering from a broken nose

24  and finger, but C/O Escalante merely told plaintiff to:  "COME

25  BACK TOMORROW." Plaintiff told him that he was in bad pain and

26  did not sleep all night, but was still refused the needed medical

27  treatment that he requested; Plainfiff was denied and/or delayed

28  needed medical treatment for more than two days and nights by

1    defendants, and all of them, on or about September 26, 27, &

2    28, 2006;

3    25. Defendants, and all of them, knew or should have known

4    that Plaintiff Chrisman, was in need of immediate medical care,

5    and they failed to take the reasonable actions to summon that

6    medical care; Plaintiff was repeatedly denied and/or delayed

7    medical treatment for all of his serious injuries suffered on

8    September 26, 2006; Plaintiff has suffered denial/delay of medical

9    care on-going for the above alleged injuries  from September

10   26, 2006 through  July    31, 2007, to present;

11   26. On  September 28, 2006, plaintiff returned to the Facility

12   One Clinic, as instructed by C/O Escalante, the previous day;

13   Plaintiff was seen by defendant Richards M.D., at which time

14   plaintiff complained of being left in severe pain for the past

15   two days with what he believed is a broken nose and broken fifth

16   finger on his left hand, and contusions on his face and head

17   that were clearly visable to all;

18   27. Defendant Richards, M.D. refused to act immediately to

19   diagnose, treat, and/or splint plaintiff's finger and nose;

20   Defendant Richards, M.D. refused plaintiff's requested X-ray

21   and M.R.I. of his head (nose), and also refused plaintiff's

22   reasonable requests for pain relief medication; Plaintiff was

23   again left without the needed immediate medical care, regardless

24   of his visit with Doctor Richards, and that this doctor knew

25   and should have known that plaintiff was in need of immediate

26   medical care, and defendant Richards, M.D., failed to take

27   reasonable actions to diagnose, treat, and/or summon appropriate

28   medical care deliberately leaving plaintiff to suffer in pain;

16.

1  And deliberately leaving plaintiff to suffer severe mental

2  distress and anguish; Defendants, and all of them caused, by

3  their actions and/or inactions the infliction of unnecessary

4  pain and suffering on plaintiff;

5      28. Between September 28 2006 and October of 2007, plaintiff

6  submitted numerous requests for treatment for his pain and his

7  psychological suffering due to the delay and denial of adequate,

8  effective, and meaningful, prompt treatment of his medical needs.

9      29. On or about 2-22-07, plaintiff reported to the Facility

10  One Clinic, as he requested prain treatment for his broken nose

11  and finger, and he spoke with Dr. Navamani about his severe

12  pain. Defendant Navamani, M.D. did absolutely nothing meaningful,

13  adequate, and effective to provide medical care for plaintiff

14  and relieve his pain and suffering despite the numerous requests

15  by plaintiff for treatment.

16      30. On or about 4-6-07, Plaintiff again reported to the

17  Doctor Navamani, after numerous delays, for treatment of his

18  pain and suffering from his broken finger and nose, but again

19  nothing was done to adequately, effectively, and meaningfully

20  relieve plaintiff of pain , nor did the doctor fix/set plaintiff's

21  broken nose and/or finger to prevent future damage, pain, and

22  suffering; Rather, plaintiff was left to suffer in pain, unable

23  to sleep, breath properly, and/or use his hand without severe

24  and excrutiating pain;

25      31. On or about 6-8-07, plaintiff reported to the Facility

26  One Clinic for another doctor's appointment that he requested.

27  Plaintiff was frustrated by this time but still requested prompt

28  treatment of his serious medical need; Plaintiff was suffering

17.

excrutiating pain from his broken nose and finger, yet once again the staff, defendant's and all of them, were unconcerned and ordered a treatment plan that was meanigless as plaintiff remained in excruciating pain as treatment was delayed and/or denied by Dr. James Richards.

32. Plaintiff is informed and believes that defendants, and acted and/or failed to act reasonably in providing plaintiff with proper medical care, treatment, and did not give plaintiff any meaningful, adequate, and effective treatment;

33. Plaintiff has not received adequate, effective, and meaningful treatment ofr his broken nose an finger to date as he is still in excruciating burning pain daily, and as a proximate cause of the delayed and denied treatment/care, plaintiff has suffered severe depresssion, cutting episodes, and psychological trauma, and pain;

34. As a proximate cause of defendant's, actions/inactions, and delay/denial of medical care treatment, plaintiff suffered through reconstructive surgery on several occasions, and he is now permanently disfigured, hideously, and suffers psychological trauma and self-esteme issues daily;

35. As a proximate cause of the delay and denial of treatment for plaintiff's fifth finger, plaintiff has suffered through the process of two surgal procedures and the subsuquent **amputation** of that finger.

36. Plaintiff repeatedly informed defendants, and all of them that he needed reasonable medical care, yet they deliberately disregarded all of those requests by refusing and/or delaying reasonable treatment, medications, and relief from the pain

18.

1 | **and** suffering.

2 |     37. Plaintiff is informed and believes, and thereon alleges,

3 | that defendants, and all of them, knew that by being unconcerned

4 | with plaintiff's medical conditions, refusing to provide medical

5 | treatment/care, and refusing to provide relief for his physical

6 | and psylogical pain and suffering that a serious risk of harm

7 | may, would, and/or did befall plaintiff in that he suffered

8 | lasting depression, psychological problems as documented, facial

9 | disfigurment, and amputation of his fifth finger; Plaintiff

10 | is informed and believes that defendants, and all of them,

11 | disregarded his pleas for medicl care deliberately, and/or

12 | claiming plaintiff **"is drug seeking"** as they do with most inmates

13 | under their care and supervision;

14 |     38. Plaintiff is informed and believed, and thereon alleges,

15 | that defendants, and all of them, learned of his medical needs

16 | and complaints via plaintiff's requests for medical care, his

17 | medical file, the incident report that was prepared by staff,

18 | and that defendants, and all of them, knew or should have known

19 | that there was a serious risk of harm to plaintiff both physically

20 | and psychologically by the medical and custodial file, doctor's

21 | medical diagnosis, medical orders and recommendations, yet all

22 | of them denied and/or delayed needed medical care and/or provided

23 | grossly inadequate treatment;

24 |     39. Defendants have repeatedly delayed preforming medical

25 | tests, providing medical treatment and reasonable accommodations

26 | resulting in the above states injuries and exacerbated psycholog-

27 | ical problems; The defendants, and all of them, exhibited a

28 | serious lack of care and concern for plaintiff;

1       <u>CLAIMS FOR RELIEF</u>

2 (Eighth Amendment Violation - Deliberate Indifference to Serious

3 Medical Needs)

4   40. Plaintiff referes to and incorporates by reference

5 herein the allegations of paragraphs 1 through 39, supra, inclus-

6 ive.

7   41. Plaintiff's medical condition, as described herein,

8 constitutes a serious medical need in that failure to treat

9 and provide reasonable care and accommodations for the conditions

10 has resulted in further significant injury, and the on-going

11 failure to treat is likely to cause more seriosu injury. Said

12 injury has included, but not limited to, severe depression,

13 severe burning pain, facial disfigurement, additional amputation

14 and/or surgical procedures, psychological trauma, inability

15 to properly grasp and hold things in his hand, and/or pick up

16 objects and/or do work, memory problems from head injury, and/or

17 financial costs ofr future doctors appointment and treatment

18 upon release; Plaintiff's medical conditions significantly affect

19 his activities in prison each and every day and his future

20 ability to function in every day life in the community;

21   42. Plaintiff is informed and believes, and there alleges,

22 that defendants, and all of them, have acted intentionally in

23 a manner described above and with knowledge of plaintiff's

24 suffering, pain, and risk of further serious harm that could

25 result from their actions/inactions, to communicate to prison

26 staff plaintiff's need for prompt, proper medical care.

27   43. Defendants conduct, and all of them, violates 42 U.S.C.

28 §1983, because that conduct constitutes deliberate indiffenence

1  to plaintiff's serious medical needs in violation of his **Eighth**
2  **Amendment right to be free from cruel and unusual punishment.**

3      44. As a proximate result of the defendants' conduct, and
4  all of them, Plaintiff has suffered and continues tossüffer
5  general damages in the form of severe pain, psychological and
6  emotional depression and stress, and physical disibility that
7  limits his daily function with his hand after the amputation
8  of the fifth digit/finger; Plaintiff is informed and believes,
9  and thereon alleges, that he will continue to suffer such damage
10 in the future;

11     45. As a further proximate result of defendants' donduct,
12 plaintiff is informed and believes, and thereon alleges, that
13 he will suffer special damages in the future in the form of
14 medical expenses for treatment of his painful amputated finger,
15 restructuring, and/or plastic surgery of facial damage and his
16 nose, treatment therefore, and treatment for his exacerbated
17 depression, psychological counseling,for psychological probmes,
18 and loss of income.

19     46. In acting/inaction as described herein above, defendants
20 and all of them acted despicably, knowingly, willfully, and
21 maliciously, or with reckless or callous disregard for plaintiffs
22 federally protected rights, entitling him to an award of exemplary
23 and punitive damages.

24                        **PRAYER FOR RELIEF**

25     **WHEREFORE,** Plaintiff, Ronald Chrisman, prays for judgement
26 against defendants, and all of them as follows:

27     1. For injunctive relief in the form of proper, prompt,
28 medical diagnostic testing and/or treatment and pain relief,

1  according to proof;

2      2. For general damages; according to proof, if needed;

3      3. For future damages; according to proof;

4      4. For special damages, according to proof;

5      5. For punitive damages; according to proof;

6      6. For reasonable attorney fees pursuant to 42 U.S.C.

7  §1988;

8      7. For costs of the suit and/or for such other and further

9  relief as the court may deem just and proper.

10 DATED:  October 31, 2007    .

11              Respectfully submitted,

12  _____

13  Ronald Chrisman, Plaintiff, In Pro Per

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                            22.

APPENDIX "    "

# EXHIBIT COVER PAGE
<br>
□ \
<br>
EXHIBIT

Description of this Exhibit:

Number of pages to this Exhibit: _____ pages.

JURISDICTION: (Check only one)

- ☐ Municipal Court
- ☐ Superior Court
- ☐ Appellate Court
- ☐ State Supreme Court
- ☒ United States District Court
- ☐ State Circuit Court
- ☐ United States Supreme Court
- ☐ Grand Jury

*LIB. DAYS*
*THURSDAYS*

NAME *CHRISMAN*    CDC # *C55019*    CDC-128(REV.4/74

ON *7/28/04* AT APPROXIMATELY *0915* HOURS, WHILE PERFORMING MY DUTIES, I, OFFICER *M. Murillo* PROVIDED DDP ORIENTATION TO INMATE *CHRISMAN* CDC# *C55019* IN ACCORDANCE WITH THE CLARK REMEDIAL PLAN, POLICES, AND PROCEDURES. *(ALL STAFF* TRAINED IN; OVERVIEW OF DEVELOPMENTAL DISABILITIES) ARE TO PROVIDE *ASSISTANCE* TO ENABLE DDP INMATES TO UNDERSTAND AND PARTICIPATE TO THE BEST OF THEIR ABILITY-DISCIPLINARY, CLASSIFICATION AND OTHER ADMINISTRATIVE HEARINGS. *THIS ASSISTANCE WOULD ALSO INCLUDE COMPLETING ANY FORMS OR DOCUMENTS* NECESSARY TO SECURE ANY RIGHTS OR BENEFITS AVAILABLE TO NONDISABLED INMATES. I EXPLAINED TO HIM THAT BECAUSE OF HIS DISABILITY, HE COULD NOT BE EXCLUDED FROM PARTICIPATION IN OR DENIED THE BENEFITS OF SERVICES, PROGRAMS OR ACTIVITIES OF THE DEPARTMENT, OR BE SUBJECTED TO DISCRIMINATION. I EXPLAINED THE RANGE OF WORK AND TRAINING PROGRAMS AVAILABLE. I ALSO EXPLAINED THE BASIC MAIL, CANTEEN, VISITING AND FACILITY PROCEDURES.

Orig: Central File
  Cc: DDP FILE
  Cc: INMATE

M. Murillo

*Ron CDrusman*    RJD-III

ORIENTATION PROVIDED BY:

GENERAL CHRONO

EXHIBIT

APPENDIX " "

# EXHIBIT COVER PAGE 2

EXHIBIT

Description of this Exhibit:

Number of pages to this Exhibit: \_\_\_\_ pages.

JURISDICTION: (Check only one)

- ☐ Municipal Court
- ☐ Superior Court
- ☐ Appellate Court
- ☐ State Supreme Court
- ☒ United States District Court
- ☐ State Circuit Court
- ☐ United States Supreme Court
- ☐ Grand Jury

CDC-128-C

AME and NUMBER  CHRISMAN, RON__D        C-55019        F4-20-124U

WNT 5P7

his inmate has **seizure disorder** therefore:

ousing - - - - - - - - **LOWER BUNK and LOWER TIER**

'ork Assignment:    No Culinary
                    No operating machinery
                    No work involving:
                    Fires or hot surfaces
                    Heights or hot liquids
                    Wet or slippery surfaces

his chrono is **PERMANENT** and shall remain in effect for the duration of the inmate's stay at RJDCF.

rig:   C-File
cc:    Unit Health Record              **I. COHEN, D. O.**
       Housing Officer                 Staff Physician/Surgeon
       Inmate

       06/03/04                        **RJDCF/SD (gh)**

ATE                                    MEDICAL—PSYCHIATRIC—DENTAL

---

STATE OF CALIFORNIA                                    DEPARTMENT OF CORRECTIONS
**RECEPTION CENTER MEDICAL CLEARANCE / RESTRICTION INFORMATION CHRONO**        CDC 128-C-1 (8/91)

WNT 5P7

CDC NUMBER  C55019   NAME  Chrisman, Ronald

**MEDICAL ELIGIBILITY:**

[X] FULL DUTY   S.P.
[ ] CAMP
[ ] CCF
[X] RESTRICTED / LIGHT DUTY
[ ] MEDICALLY UNASSIGNED
    [ ] LONG TERM
    [ ] SHORT TERM
    [ ] WELL-HANDICAPPED
        PROGRAM ELIGIBLE
[ ] FOOD HANDLING
    [ ] CLEARED
    [ ] NOT CLEARED

**MEDICAL RESTRICTIONS:**
[X] SEIZURE DISORDER
    DATE OF LAST
    SEIZURE:
                Typo

[ ] CHRONIC INFECTIOUS DISEASE,
      GROUP I, II, III, IV
[X] COMMUNICABLE DISEASE
      (i.e., TB, HEPATITIS, SYPHILIS)
    [ ] ROUTINE FOLLOW-UP NEEDED
    [ ] URGENT FOLLOW-UP NEEDED
[ ] HEARING IMPAIRED
    [ ] HAS HEARING AID   [ ] NEEDS H. AID
[ ] BLIND   [ ] SERIOUS VISION PROBLEM
[ ] MEDICATION ALLERGIES: [ ] NO [X] YES
    Dilantin
[ ] DIABETIC: [ ] ORAL   [ ] INJECTION
[ ] RESPIRATORY, (i.e., ASTHMA)
    [ ] MEDICATION REQUIRED
[ ] HEART DISEASE / HYPERTENSION
    [ ] MEDICATION REQUIRED
[ ] ORTHOPEDIC PROBLEM, DEBILITATING
    [ ] LOWER BUNK NEEDED
    [ ] LOWER TIER NEEDED

[ ] MOBILITY IMPAIRED:
    [ ] PARAPLEGIC    [ ] QUADRAPLEGIC
    [ ] WHEELCHAIR    [ ] WALKER
    [ ] CANE
    [ ] AMPUTEE:
        [ ] LEGS:   L    R
        [ ] ARMS:   L    R
    [ ] PROSTHESIS:
        [ ] FULL   [ ] PARTIAL
[ ] PSYCHIATRIC CONDITION
    [ ] CLEARED   [ ] NEEDS EVAL.
    [ ] PSYCHIATRIC MEDICATION NEEDED
    [ ] YES       [ ] NO
[ ] DENTAL CLASS: 1  2  3  4  (5)
    [ ] FOLLOW UP NEEDED:
        [ ] ROUTINE  [ ] URGENT
[ ] PREGNANT:  TRIMESTER: 1  2  3

OTHER RESTRICTIONS:
NO STAND > 20MIN, WALK > 1/4 MILE OR LIFTING > 10 #

INSTITUTION  RJD    PHYSICIAN'S SIGNATURE AND TITLE  Coop

DISTRIBUTION:
ORIG - C-FILE    COPY - CDC HEALTH RECORD
COPY - CC I      COPY - INMATE

DATE  6/17/04

APPENDIX "            "

# EXHIBIT COVER PAGE 

EXHIBIT

Description of this Exhibit:

Number of pages to this Exhibit: _____ pages.

JURISDICTION: (Check only one)

- ☐ Municipal Court
- ☐ Superior Court
- ☐ Appellate Court
- ☐ State Supreme Court
- ☐ United States District Court
- ☐ State Circuit Court
- ☐ United States Supreme Court
- ☐ Grand Jury

Approved for
use with
Judicial
Council forms
Jan. 1, 1997)

REPORT ID: TS3030                                    REPORT DATE: 08/01/07
                                                     PAGE NO:      1

                       CALIFORNIA DEPARTMENT OF CORRECTIONS
                           R.J.DONOVAN CORR. FACILITY
                         INMATE TRUST ACCOUNTING SYSTEM
                         INMATE TRUST ACCOUNT STATEMENT

                    FOR THE PERIOD: JUL. 01, 2007 THRU AUG. 01, 2007

ACCOUNT NUMBER : C55019              BED/CELL NUMBER: F10200000000144L
ACCOUNT NAME   : CHRISMAN, RONALD         ACCOUNT TYPE: I
PRIVILEGE GROUP: A
                          TRUST ACCOUNT ACTIVITY

    << NO ACCOUNT ACTIVITY FOR THIS PERIOD >>


                          CURRENT HOLDS IN EFFECT

  DATE      HOLD
  PLACED    CODE         DESCRIPTION        COMMENT    HOLD AMOUNT
----------  ----  ---------------------------  ----------  -----------
02/02/2007  H110  COPIES HOLD                  3200/SEP06        1.20
02/02/2007  H110  COPIES HOLD                  3200/NOV06        0.30
03/23/2007  H110  COPIES HOLD                  3980/MAR07        0.50
04/20/2007  H110  COPIES HOLD                  4373/MAR07        0.80
04/20/2007  H110  COPIES HOLD                  4373/MAR07        3.05
04/20/2007  H110  COPIES HOLD                  4373/APR07        1.65
05/17/2007  H110  COPIES HOLD                  4851/APR07        3.15
05/17/2007  H110  COPIES HOLD                  4851/APR07        0.10
05/17/2007  H110  COPIES HOLD                  4851/APR07        1.75
05/17/2007  H110  COPIES HOLD                  4851/APR07        0.70
05/17/2007  H110  COPIES HOLD                  4876/MAY07        1.10
05/17/2007  H110  COPIES HOLD                  4876/MAY07        0.60
05/17/2007  H110  COPIES HOLD                  4876/MAY07        0.65
06/04/2007  H110  COPIES HOLD                  5165/MAY07        0.40
06/04/2007  H110  COPIES HOLD                  5165/MAY07        0.20
06/04/2007  H110  COPIES HOLD                  5165/MAY07        1.05
06/04/2007  H110  COPIES HOLD                  5165/MAY07        2.45
06/04/2007  H110  COPIES HOLD                  5165/MAY07        1.00


                          TRUST ACCOUNT SUMMARY

| BEGINNING BALANCE | TOTAL DEPOSITS | TOTAL WITHDRAWALS | CURRENT BALANCE | HOLDS BALANCE | TRANSACTIONS TO BE POSTED |
|---|---|---|---|---|---|
| 0.00 | 0.00 | 0.00 | 0.00 | 20.65 | 0.00 |

                                                    CURRENT
                                                   AVAILABLE
                                                    BALANCE
                                                 --------------
                                                      20.65-
                                                 --------------
                                                 --------------

APPENDIX "            "

# EXHIBIT COVER PAGE 

EXHIBIT

Description of this Exhibit:

Number of pages to this Exhibit: ____2____ pages.

JURISDICTION: (Check only one)

☐ Municipal Court
☐ Superior Court
☐ Appellate Court
☐ State Supreme Court
☒ United States District Court
☐ State Circuit Court
☐ United States Supreme Court
☐ Grand Jury

Approved for
use with
Judicial
Council forms
(Jan. 1, 1997)

## § 845.4   ACTIONS—PUBLIC ENTITIES & EMPLOYEES   Title 1

for such injury shall be deemed to accrue until it has first been determined that the confinement was illegal.

(Added by Stats.1963, c. 1681, p. 3278, § 1. Amended by Stats.1970, c. 1099, p. 1958, § 6.)

### Legislative Committee Comments—Senate
#### 1963 Addition

This section makes clear that liability exists for the intentional and unjustifiable interference with a basic legal right—the right of a person confined involuntarily to test in court a possible flood of unmeritorious actions, the section requires that a determination shall have been made that the confinement was illegal before an action for damages can be commenced. Such a determination might be a judicial or administrative determination that a prisoner should be released because his confinement was illegal.

### Law Revision Commission Comments
#### 1970 Amendment

Section 845.4 is amended to refer to the time of the accrual of the cause of action. This amendment clarifies the relationship of this section to the claims statute. As originally enacted, the statute of limitations might have expired before illegality of the imprisonment was determined—a determination that must be made before the action may be commenced. [9 Cal.L.Rev.Comm. Reports 801 (1969)]

### Historical and Statutory Notes

Application of Stats.1963, c. 1681, see Historical and Statutory Notes under Government Code § 810.

The 1970 amendment substituted "no cause of action for such injury shall be deemed to accrue" for "no action for such injury may be commenced".

### Law Review Commentaries

Liability of sovereign for wrongful injury of prisoners. 2 Pac.L.J. 697 (1971).

### Library References

Prisons ⊜17.
WESTLAW Topic No. 310.
C.J.S. Prisons and Rights of Prisoners §§ 55 to 90.

West's California Practice—Defenses in Civil Actions, Schwing, §§ 38.76, 38.79, 38.81.
West's California Practice—Tort Law, Witkinson and Barker, § 32.19.

## § 845.6.  Medical care for prisoners; failure to obtain

Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but, except as otherwise provided by Sections 855.8 and 856, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care. Nothing in this section exonerates a public employee who is lawfully engaged in the practice of

458

## § 845.6   POLICE AND CORRECTIONAL ACTIVITIES   Div. 3.6

one of the healing arts under any law of this state from liability for injury proximately caused by malpractice or exonerates the public entity from its obligation to pay any judgment, compromise, or settlement that it is required to pay under subdivision (a) of Section 844.6.

(Added by Stats.1963, c. 1681, p. 3278, § 1. Amended by Stats.1970, c. 1099, p. 1958, § 7.)

### Law Revision Commission Comments
#### 1963 Addition

This section limits the duty to provide medical care for prisoners to cases where there is actual or constructive knowledge that the prisoner is in need of immediate medical care. The standards of medical care to be provided to prisoners involve basic governmental policy that should not be subject to review in tort suits for damages. The immunity from liability for damages that is provided by this section exists even where some other statute might be construed to impose a mandatory duty to provide medical care to prisoners under other circumstances. In cases where another statute is so construed, the prisoner is left to the other remedies provided by law to compel public employees to perform their duties. [4 Cal.L.Rev.Comm. Reports 801 (1963)]

#### 1970 Amendment

Section 845.6 is amended to expand the group of public employees who are referred to as potentially liable for medical malpractice to include all types of medical personnel, not merely those who are "licensed" under the Business and Professions Code. This conforms Section 845.6 to amended Section 844.6. The amendment also clarifies the relationship of Section 845.6 and subdivision (d) of Section 844.6. [9 Cal.L.Rev.Comm. Reports 801 (1969)]

### Historical and Statutory Notes

Application of Stats.1963, c. 1681, see Historical and Statutory Notes under Government Code § 810.

The 1970 amendment rewrote the last sentence which prior thereto read: Nothing in this section exonerates a public employee licensed in one of the healing arts under Division 2 (commencing with Section 500) of the Business and Professions Code from liability for injury proximately caused by malpractice or exonerates the public entity from liability for injury proximately caused by such malpractice.

### Law Review Commentaries

Liability of sovereign for wrongful injury from tort claims by prisoners. 19 Hastings L.J. 573 (1968).

### Library References

Prisons ⊜17.
WESTLAW Topic No. 310.
C.J.S. Prisons and Rights of Prisoners §§ 55 to ...
California Practice Guide: Personal Injury, Flahavan, Rea, Kelly & Tenner, see Guide's Table of Statutes for chapter paragraph number references to paragraphs discussing this section.

West's California Handbook—California Medical Malpractice, McDonald, §§ 2.9, 4.6.
West's California Practice—Defenses in Civil Actions, Schwing, §§ 38.70, 38.78, 38.79.
West's California Practice—Tort Law, Witkinson and Barker, § 32.18.

### Notes of Decisions

Construction and application   1
Deficient care   6
Jury questions   8
Knowledge and intent   4

459

## § 845.6 — ACTIONS—PUBLIC ENTITIES & EMPLOYERS — Title 1

Pleading 7
Proximate cause 2
Serious and obvious need 3
Summoning care 3

**1. Construction and application**

Under California Tort Claims Act (§ 810 et seq.) public entity cannot be held liable for injury to any prisoner except as provided under subdivisions of § 844.6 relating to injury to prisoners and for failure to take reasonable action to summon medical care for prisoner. Hart v. Orange County (App. 4 Dist. 1967) 62 Cal.Rptr. 73, 254 Cal.App.2d 302.

This section of California Tort Claims Act (§ 810 et seq.) dealing with public entity's failure to furnish or obtain medical care for prisoner deals with positive subject of creation of liability which has to do with something which exists neither privately nor publicly but which is special burden created by legislation to be borne by public entity. Hart v. Orange County (App. 4 Dist. 1967) 62 Cal.Rptr. 73, 254 Cal.App.2d 302.

A prisoner could maintain an action against the county under the California Tort Claims Act (§ 810 et seq.) for failure of the county to take reasonable action to summon medical care. Sanders v. Yuba County (App. 3 Dist. 1967) 55 Cal.Rptr. 852, 247 Cal.App.2d 748.

**2. Proximate cause**

Scope of §§ 855.8, 856 providing immunity to public officials for failure to diagnose or to prescribe treatment and for determination whether to confine for mental illness person in their custody was limited to this general duty to summon medical care established by this section and thus, complaint which alleged that decedent's suicide after release from custody of sheriff's office was proximate result of sheriff's breach of their statutory duty of care to prisoner by failing to summon medical care when they had responsibility to know that decedent was suicidal stated cause of action not subject to dismissal by demurrer. Johnson for Johnson v. Los Angeles County (App. 2 Dist. 1983) 191 Cal.Rptr. 704, 143 Cal.App.3d 298.

Juvenile correctional center inmate's drowning death was not proximately caused by prison's alleged failure to furnish or obtain medical care, and thus counties and probation officer were immune under this section from any liability arising from the death. May v. Monterey County (App. 1 Dist. 1983) 189 Cal.Rptr. 63, 139 Cal.App.3d 717.

**3. Serious and obvious need**

Statute imposing liability on public entity and public employees for failing to take reasonable action to summon medical care on behalf of prison inmates is limited to situations in which inmate is suffering from serious and obvious medical condition that requires immediate medical care. Watson v. State (App. 2 Dist. 1993) 26 Cal.Rptr.2d 262, 21 Cal.App.4th 836.

Evidence that decedent was arrested for apparently being drunk, that decedent was brought to jail, emotional upset during his booking, that breathalyzer test revealed absence of any significant amount of alcohol in decedent's system, that police failed to hourly inspect decedent's cell as required by regulations, that decedent hung himself within hours after booking established that decedent had been under influence of barbiturates but suffered from no other pathology, was insufficient to support jury's finding in wrongful death action against city and police officer that decedent had been in obvious need of medical care and that police had failed to provide such medical care. Lucas v. City of Long Beach (App. 2 Dist. 1976) 131 Cal.Rptr. 470, 60 Cal.App.3d 341.

Plaintiff prisoner's request of attendant for something for headache was not notice that she was in need of immediate medical care, for purposes of this section. Kinney v. Contra Costa County (App. 1 Dist. 1970) 87 Cal.Rptr. 638, 8 Cal.App.3d 761.

**4. Knowledge and intent**

Public entity's liability under statute for failing to take reasonable action to summon medical care for prison inmate is limited to those situations in which public entity intentionally or unjustifiably fails to furnish immediate medical care. Watson v. State (App. 2 Dist. 1993) 26 Cal.Rptr.2d 262, 21 Cal.App.4th 836.

**5. Summoning care**

Statute requiring public entities and public employees to take reasonable action to "summon" medical care for prison inmates is not met by such care did not impose any obligation on state. Watson v. State (App. 2 Dist. 1993) 26 Cal.Rptr.2d 262, 21 Cal.App.4th 836.

**6. Deficient care**

Medical care provided to state prison inmate who injured his ankle while playing basketball was not so deficient as to be tantamount to no

## § 845.8 — POLICE AND CORRECTIONAL ACTIVITIES — Div. 3.6

medical care, so as to render state liable for failing to take reasonable action to summon medical care on behalf of inmate, notwithstanding that prison physicians who examined inmate allegedly misdiagnosed his torn achilles tendon as sprained ankle, while incarcerated in prison, inmate was able to walk and complained only that his ankle was tender. Watson v. State (App. 2 Dist. 1993) 26 Cal.Rptr.2d 262, 21 Cal.App.4th 836.

**7. Pleading**

Demurrer of deputy city attorney to complaint was properly sustained where complaint charged no wrongdoing by deputy city attorney other than his failure to advise municipal court of plaintiff's illness and to request a continuance, which charged, if anything at all, only false arrest, as to which deputy city attorney had immunity under § 821.6. Apelian v. Los Angeles County (App. 2 Dist. 1968) 72 Cal.Rptr. 265, 266 Cal.App.2d 550.

**8. Jury questions**

Evidence in action against county that decedent was booked in evening on drunk charge, was unable to walk alone when brought to jail, did not have appearance of standard drunk, was in a coma or unconscious and had no odor of alcohol about him, and was still unconscious twelve hours after he was booked, disclosed factual questions for jury as to whether employee acting within scope of his employment had actual or constructive knowledge of prisoner's need for immediate care and of reasonable action to summon immediate medical care. Hart v. Orange County (App. 4 Dist. 1967) 62 Cal. Rptr. 73, 254 Cal.App.2d 302.

### § 845.8. Parole or release of prisoner; escape of prisoners; persons resisting arrest

Neither a public entity nor a public employee is liable for:

(a) Any injury resulting from determining whether to parole or release a prisoner or from determining the terms and conditions of his parole or release or from determining whether to revoke his parole or release.

(b) Any injury caused by:

(1) An escaping or escaped prisoner;

(2) An escaping or escaped arrested person; or

(3) A person resisting arrest.

(Added by Stats.1963, c. 1681, p. 3279, § 1. Amended by Stats.1970, c. 1099, p. 1958, § 8.)

**Law Revision Commission Comments**

**1963 Addition**

This section is a specific application of the discretionary immunity recognized in California cases and in Section 820.2. The extent of the freedom that must be accorded to prisoners for rehabilitative purposes and the nature of the precautions necessary to prevent escape of prisoners are matters that should be determined by the proper public officials unfettered by any fear that their decisions may result in liability. [4 Cal.L.Rev.Comm. Reports 801 (1963)]

**1970 Amendment**

Subdivision (b) of Section 845.8 has been amended to extend the immunity to include persons resisting or escaping from arrest. This probably codifies former law. See Ne Casek v. City of Los Angeles, 233 Cal.App.2d 131, 43 Cal.Rptr. 294 (1965) (city not liable to pedestrian injured by escaping arrestee). But see Johnson v. State, 69 Cal.2d 782, 447 P.2d 352, 73 Cal.Rptr. 240 (1968). [9 Cal.L.Rev.Comm. Reports 801 (1969)]

APPENDIX "          "

# EXHIBIT COVER PAGE  5

EXHIBIT

Description of this Exhibit:

Number of pages to this Exhibit: ___3___ pages.

JURISDICTION: (Check only one)

- ☐ Municipal Court
- ☐ Superior Court
- ☐ Appellate Court
- ☐ State Supreme Court
- ☐ United States District Court
- ☐ State Circuit Court
- ☐ United States Supreme Court
- ☐ Grand Jury

Approved for
use with
Judicial
Council forms
(Jan. 1, 1997)



STATE OF CALIFORNIA
ARNOLD SCHWARZENEGGER, Governor

GOVERNMENT CLAIMS PROGRAM
400 R Street, 5th Floor ♦ Sacramento, California 95814
Mailing Address: P.O. Box 3035 ♦ Sacramento, California 95814
Toll Free Telephone Number 1-800-955-0045 ♦ Fax Number: (916) 491-6443
Internet: www.vcgcb.ca.gov

ROSARIO MARIN
Secretary
State and Consumer Services Agency
Chairperson
JOHN CHIANG
State Controller
Board Member
MICHAEL A. RAMOS
San Bernardino County District Attorney
Board Member
KAREN McGAGIN
Executive Officer

Ronald Chrisman C55019
PO Box 799001
San Diego, CA  92179

April 09, 2007

RE:  Claim G566884 for Ronald Chrisman, C55019

Dear Ronald Chrisman,

The Victim Compensation and Government Claims Board (VCGCB) received your claim on March 30, 2007.

Based on its review of your claim, Board staff believes that the court system is the appropriate means for resolution of these claims, because the issues presented are complex and outside the scope of analysis and interpretation typically undertaken by the Board. The claim has been placed on the consent agenda.  The VCGCB will act on your claim at the May 17, 2007 hearing. You do not need to appear at this hearing.  The VCGCB's rejection of your claim will allow you to initiate litigation should you wish to pursue this matter further.

If you have questions about this matter, please mention letter reference 99 and claim number G566884 when you call or write your claim technician/analyst at (800) 955-0045.

Sincerely,

Government Claims Division
Victim Compensation and Government Claims Board

cc:  B-23 Corrections and Rehabilitation, Attn: Donna Corbin

      Ltr 99 Complex Issue Reject



STATE OF CALIFORNIA
ARNOLD SCHWARZENEGGER, Governor

**GOVERNMENT CLAIMS PROGRAM**
400 R Street, 5th Floor ♦ Sacramento, California 95814
Mailing Address: P.O. Box 3035 ♦ Sacramento, California 95814
Toll Free Telephone Number 1-800-955-0045 ♦ Fax Number: (916) 491-6443
Internet: www.vcgcb.ca.gov

ROSARIO MARIN
Secretary
State and Consumer Services Agency
Chairperson

JOHN CHIANG
State Controller
Board Member

MICHAEL A. RAMOS
San Bernardino County District Attorney
Board Member

KAREN McGAGIN
Executive Officer

Ronald Chrisman C55019
PO Box 799001
San Diego, CA 92179

April 25, 2007

RE:  Claim G566884 for Ronald Chrisman, C55019

Dear Ronald Chrisman,

You were previously notified that your claim was scheduled to be acted upon by the Board
at the meeting on May 17, 2006 at 10:00 a.m.  However, the meeting had to be rescheduled.

The claim will now be heard at the Board meeting on May 22, 2007 at 10:00 a.m., in Sacramento.

You will be receive written notification of the Board's decision within approximately 3 weeks
of the meeting.

Sincerely,

Government Claims Division
Victim Compensation and Government Claims Board

cc:  B-23 Corrections and Rehabilitation, Attn: Donna Corbin

Ltr 6 Hearing Dt Chg





**C A L I F O R N I A**

**VCGCB**

Victim Compensation & Government Claims Board

STATE OF CALIFORNIA
ARNOLD SCHWARZENEGGER, Governor

---

GOVERNMENT CLAIMS PROGRAM
400 R Street, 5th Floor ♦ Sacramento, California 95814
Mailing Address: P.O. Box 3035 ♦ Sacramento, California 95814
Toll Free Telephone Number 1-800-955-0045 ♦ Fax Number: (916) 491-6443
Internet: www.vcgcb.ca.gov

ROSARIO MARIN
Secretary
State and Consumer Services Agency
Chairperson

JOHN CHIANG
State Controller
Board Member

MICHAEL A. RAMOS
San Bernardino County District Attorney
Board Member

KAREN McGAGIN
Executive Officer

Ronald Chrisman C55019
PO Box 799001
San Diego, CA  92179

May 25, 2007

RE:  Claim G566884 for Ronald Chrisman, C55019

Dear Ronald Chrisman,

The Victim Compensation and Government Claims Board rejected your claim at its hearing on
May 22, 2007.

If you have questions about this matter, please mention letter reference 118 and claim number G566884 when
you call or write your claim technician or analyst at (800) 955-0045.

Sincerely,


Linda Paluda,  Program Manager
Government Claims Division
Victim Compensation and Government Claims Board

cc:  B-23 Corrections and Rehabilitation, Attn: Donna Corbin

Warning

"Subject to certain exceptions, you have only six months from the date this notice was personally delivered or
deposited in the mail to file a court action on this claim."  See Government Code Section 945.6.  You may
seek the advice of an attorney of your choice in connection with this matter.  If you desire to consult an
attorney, you should do so immediately.  PLEASE CONSULT GOVERNMENT CODE SECTION 955.4 FOR
PROPER SERVICE OF SUMMONS AND COMPLAINT.

Ltr 118 Board Claim Rejection

## PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA        )
                           ) SS
COUNTY OF SAN DIEGO )

[C.C.P. §§ 446, 2015.5; 28 U.S.C. §1746]

I, *Rodney Oglesby*, am a resident of the State of California and am over the age of eighteen years and am not a party to the above-entitled action. My address is listed below.

On *Oct 31, 2007*, I served the following documents:

REQUEST FOR APPOINTMENT OF COUNSEL
§1983 CIVIL RIGHTS COMPLAINT

by placing a true copy thereof enclosed in a sealed envelope with First Class postage thereon fully prepaid in the United States Mail by delivering to prison officials for processing through the Institution's internal legal mail system at San Diego California, addressed as follows::

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
CLERK OF U.S. DISTRICT COURT
880 FRONT ST.  , ROOM 4290
SAN DIEGO, CALIFORNIA 92101-8900

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed in the County of San Diego, California on *Oct 31, 2007*

*Rodney Oglesby*
*R.J.D. C.F. / FH- 116*
P.O. Box *799001*
San Diego, CA   92179-900 1

Pursuant to the holding of the United States Supreme Court in Houston v. Lack 108 S. Ct. 2379, 487 U.S. 266, 101 L.Ed.2d 245 (1988) and FRAP, Rule 4 (c) inmate legal documents are deemed filed on the date they are delivered to prison staff for processing and mailing via the Institution's internal legal mail procedures.

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

I (a) PLAINTIFFS

**Ronald Chrisman**

2254    1983
DEFENDANTS

FILING FEE PAID
Yes    No ✓

IFP MOTION FILED
Yes    No

COPIES SENT TO
Court    ProSe

FILED
2007 NOV -2 PM 3:04
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ RM _____ DEPUTY

**David Smith, et al**

(b) COUNTY OF RESIDENCE OF FIRST LISTED    San Diego
PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Ronald Chrisman
PO Box 799001
San Diego, CA 92179
C-55019

ATTORNEYS (IF KNOWN)

'07 CV 2101 IEG    LSP

| II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY) | | III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT (For Diversity Cases Only) | | |
|---|---|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) | | PT  DEF | PT  DEF |
| | | Citizen of This State | ☐1  ☐1  Incorporated or Principal Place of Business in This State | ☐4  ☐4 |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III | Citizen of Another State | ☐2  ☐2  Incorporated and Principal Place of Business in Another State | ☐5  ☐5 |
| | | Citizen or Subject of a Foreign Country | ☐3  ☐3  Foreign Nation | ☐6  ☐6 |

IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).

## 42 U.S.C. 1983

V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| | PERSONAL INJURY | PERSONAL INJURY | | | |
| ☐ 110 Insurance | | | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ Marine | ☐ 310 Airplane | ☐ 362 Personal Injury- Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC881 | PROPERTY RIGHTS | ☐ 430 Banks and Banking |
| ☐ Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 640 RR & Truck | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | PERSONAL PROPERTY | ☐ 650 Airline Regs | SOCIAL SECURITY | |
| | | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 153Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | LABOR | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC |
| ☐ Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710Fair Labor Standards Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | FEDERAL TAX SUITS | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 790 Other Labor Litigation | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | Security Act | | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State |
| ☐ 290 All Other Real Property | | ☒ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |

VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)

☒ 1 Original Proceeding  ☐ 2 Removal from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

VII. REQUESTED IN COMPLAINT:    ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23    DEMAND $    Check YES only if demanded in complaint:
JURY DEMAND: ☐ YES  ☐ NO

VIII. RELATED CASE(S) IF ANY (See Instructions):    JUDGE    Docket Number

DATE    November 2, 2007    SIGNATURE OF ATTORNEY OF RECORD
*R. Chrisman* (signature)